UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MARQUES HUNTLEY,

                                 Plaintiff,

                -against-

CITY OF NEW YORK, POLICE OFFICER ACOSTA,
first name unknown, Shield and Tax Registry Nos.
Unknown, and "JOHN DOES 1-4," members of the
New York City Police Department, Shield Nos. and
Tax Registry Nos. Unknown,

                                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

                                  COMPLAINT
                                  (Jury Trial Demanded)

                                  08 Civ. 9374 (PGG)
                                  ECF CASE

         Plaintiff Marques Huntley, by his attorney Scott A. Korenbaum, Esq., for his complaint, alleges as follows:

## INTRODUCTION

         1.     Marques Huntley brings this action pursuant to, among other things, 42 U.S.C. § 1983, to redress the deprivation of his constitutional rights.  More specifically, on November 30, 2007, at approximately 10:30 p.m., one or members of the New York City Police Department falsely arrested Mr. Huntley.  Moreover, the officer who effectuated the arrest of Mr. Huntley used unnecessary and excessive force during the course of his arrest.

## JURISDICTION AND VENUE

         2.     Pursuant to 28 U.S.C. §§ 1331 and 1343, jurisdiction is proper as Mr. Huntley's claims arise under federal law.  Pursuant to 28 U.S.C. § 1367, jurisdiction is proper as to the claims of Mr. Huntley arising under the common law of the State of New York.

         3.     Pursuant to 28 U.S.C. § 1391(b), venue is proper as a substantial part of the events or omissions giving rise to Mr. Huntley's claims occurred in Manhattan.

## PARTIES

4.     Mr. Huntley is a citizen of the United States.  He resides in the State of New York, County of New York

5.     Defendant Police Officer Acosta, first name unknown, Shield and Tax Registry Nos. Unknown, was, at all times relevant herein, a member of the New York City Police Department ("NYPD"). Upon information and belief, at all times relevant herein, he was assigned to the 30th Precinct.

6.     Upon information and belief, defendant Acosta is still a member of the NYPD.  At all times relevant herein, he was acting within the scope of his employment and under color of law.

7.     Defendant John Does 1-4, Shield and Tax Registry Nos. Unknown, were, at all times relevant herein, members of the NYPD. Upon information and belief, at all times relevant herein, they were assigned to the 30th Precinct.

8.     Upon information and belief, defendant Does are still members of the NYPD.  At all times relevant herein, they were acting within the scope of their employment and under color of law.

9.     Defendant City of New York is a municipal corporation organized pursuant to the laws of the State of New York.  It has all the powers vested in it by the laws of the State of New York, the City of New York and the Charter of the City of New York.  At all times relevant herein, it was the employer of the individually named defendants, including defendant Doe.

## ADMINISTRATIVE PREREQUISITES

10.     On January 17, 2008, Mr. Huntley filed a timely Notice of Claim with defendant City in the Office of the City Comptroller, in accordance with the General Municipal Law.

11.     At least thirty days have elapsed since Mr. Huntley filed the aforesaid Notice of Claim

and adjustment or payment thereof has been neglected or refused.  This action is commenced within one year and 90 days from the date of the occurrences alleged herein, as required under Section 50-i of the General Municipal Law.

FACTS UNDERLYING THE COMPLAINT

12.     Mr. Huntley is a twenty-four year old man.  As of November 30, 2007, he lived with his mother in Apartment D29A, located at 3333 Broadway, in Manhattan.

13.     On the evening of November 30, 2007, Mr. Huntley and his friend, Luis Mendez, went to McDonald's to get a bite to eat.  After they had eaten, Mr. Huntley and his friend returned to the laundry room located in Tower A of 3333 Broadway.

14.     Mr. Huntley and Mr. Mendez listened to music in the laundry room.  While there, the building security guard entered and asked if they had heard a gun shot.  Mr. Huntley and Mr. Mendez had not.

15.     Approximately 15 minutes after entering the laundry room, two or three members of the NYPD approached them and asked what they were doing there.  Mr. Huntley and Mr. Mendez stated that they were just chilling and listening to music.

16.     These officers asked Mr. Huntley and Mr. Mendez for identification, which they supplied, and also asked if they had heard gunshots.  Mr. Huntley and Mr. Mendez told these officers that they had not.  Apparently satisfied, these members of the NYPD left the laundry room.

17.     Approximately 10 minutes later, an additional two or three members of the NYPD came to the laundry room with the original officers who had just spoken with Mr. Huntley and Mr. Mendez.  One of these officers was defendant Acosta.

18.     The other members of the NYPD who entered the laundry room were Does 1 - 4.

-3-

Upon entering the laundry room, one of the defendants stated that they were looking for two persons who were involved in a shooting, and that Mr. Huntley and Mr. Mendez fit the description. Neither Mr. Huntley nor Mr. Mendez were involved in any shooting on November 30, 2007, or, in the case of Mr. Huntley, any other night. In fact, Mr. Huntley had never been arrested as of November 30, 2007.

19.     Acosta asked Mr. Huntley and Mr. Mendez for identification. When Mr. Huntley explained that he had just showed ID to one of the officers, Acosta again asked for ID. Mr. Huntley complied with this request.

20.     Acosta then ordered Mr. Huntley to stand up, which order he complied with. Acosta then placed Mr. Huntley on the wall and began to frisk him. When Mr. Huntley asked why he was doing this, Acosta told him to shut up and banged him against the wall.

21.     When Mr. Huntley asked Acosta why he had just banged him against the wall, Acosta grabbed Mr. Huntley's arms behind his back and threw him to the floor. Acosta then pushed Mr. Huntley's face into the floor while other members of the NYPD held him down.

22.     While Mr. Huntley lay defenseless on the ground, Acosta hit him in the back of his head with his forearm and pressed his knee into his back, telling him repeatedly to shut up. After what seemed like an eternity, one or more of the officers handcuffed Mr. Huntley tightly and yanked him to his feet.

23.     Following his arrest, one or more of the defendants transported Mr. Huntley to the 30th precinct. Thereafter, he was transported to Manhattan Central Booking at approximately 9:00 a.m.

24.     Upon information and belief, Acosta charged Mr. Huntley with Obstructing

Governmental Administration in the Second Degree. Upon further information and belief, he was released from Central Booking at approximately 8:00 p.m. on December 1, 2007, without having been arraigned.

25.     Upon information and belief, the NYPD arrested two African-American men for the shooting that occurred in Tower A on November 30, 2007. Upon further information and belief, neither of these men resemble Mr. Huntley.

FIRST CLAIM FOR RELIEF
(42 U.S.C. § 1983--False Arrest)

26.     Plaintiff Marques Huntley repeats and realleges the allegations contained in paragraphs 1 through 25, as if fully set forth herein.

27.     On November 30, 2007, defendants Acosta, and/or Does 1 - 4 arrested Mr. Huntley.

28.     These defendants did not have probable cause to believe that Mr. Huntley had committed any crime. Put simply, Mr. Huntley did not engage in any conduct that warranted his arrest and detention.

29.     As a result of these defendants' conduct, Mr. Huntley was detained, and at all times he knew he was detained. Moreover, Mr. Huntley did not consent to his confinement.

30.     Because these defendants did not have probable cause to believe that Mr. Huntley had committed a crime, his arrest was unreasonable within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution.

31.     As a result of his arrest by the individual defendants, Mr. Huntley suffered psychological injuries, and continues to suffer psychological harm.

SECOND CLAIM FOR RELIEF
(42 U.S.C. § 1983–Excessive Force)

32.      Plaintiff Marques Huntley repeats and realleges the allegations contained in paragraphs 1 through 31, as if fully set forth herein.

33.      On November 30, 2007, defendant Acosta was involved in the arrest of Mr. Huntley.

34.      In effectuating his arrest, defendant Acosta used more force than was necessary.

35.      As the behavior of Mr. Huntley provided no justification for Acosta's conduct, the defendant's actions was unreasonable within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution.

36.      As a result of defendant's conduct, Mr. Huntley suffered physical and psychological injury, and continues to suffer psychological injury.

THIRD CLAIM FOR RELIEF
(State Law–False Arrest)

37.      Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 36, as if fully set forth herein.

38.      On November 30, 2007, defendants Acosta, and/or Does 1 - 4 arrested Mr. Huntley.

39.      These defendants did not have probable cause to believe that Mr. Huntley had committed any crime.  Put simply, Mr. Huntley did not engage in any conduct that warranted his arrest and detention.

40.      As a result of these defendants' conduct, Mr. Huntley was detained, and at all times he knew he was detained.  Moreover, Mr. Huntley did not consent to his confinement.

41.      Because these defendants did not have probable cause to believe that Mr. Huntley had committed a crime, no legal justification existed for his arrest.

-6-

42.     Defendants Acosta and Does 1 - 4 were agents of defendant City and were at all relevant times acting within the scope of their employment.

43.     As a result of his arrest by the individual defendants, Mr. Huntley suffered psychological injuries, and continues to suffer psychological harm.

44.     As the employer of the individual defendants, defendant City is responsible for Mr. Huntley's injuries under the doctrine of *respondeat superior*.

## FOURTH CLAIM FOR RELIEF
### (42 U.S.C. § 1983--Battery)

45.     Plaintiff Marques Huntley repeats and realleges the allegations contained in paragraphs 1 through 43, as if fully set forth herein.

46.     On November 30, 2007, defendant Acosta intentionally and without legal justification struck Mr. Huntley about his head and body in a harmful and offensive manner.

47.     Mr. Huntley did not consent or otherwise authorize defendant Acosta to touch him this way.

48.     Defendants Acosta and Does 1 -4 were agents of defendant City and were at all relevant times acting within the scope of their employment.

49.     As a result of defendant's conduct, Mr. Huntley suffered physical and psychological injury, and continues to suffer psychological injury.

50.     As the employer of the individual defendants, defendant City is responsible for the injuries Mr. Huntley suffered, and continues to suffers, as a result of the conduct of defendant Acosta pursuant to the doctrine of *respondeat superior*.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Mr. Huntley prays for the following relief:

(a)     compensatory damages in an amount to be determined at trial;

(b)     punitive damages in an amount to be determined at trial;

(c)     reasonable attorneys' fees;

(d)     costs and expenses; and

(e)     such other and further relief as is just and proper.


Dated:  New York, New York
        October 31, 2008


                            SCOTT A. KORENBAUM, ESQ.
                            Attorney for Plaintiff Marques Huntley
                            111 Broadway, Suite 1305
                            New York, New York 10006
                            (212) 587-0018


                            By: _____/s_____
                                    Scott A. Korenbaum